IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| **TAMEKA MUTCHERSON,** ) | |
| ) | Civil Action No. |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| **ATLANTIC HOUSING** ) | |
| **FOUNDATION, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT FOR DAMAGES

Now comes Plaintiff Tameka Mutcherson ("Plaintiff" or "Ms. Mutcherson"), by and through counsel, and files this her Complaint for Damages against Defendant Atlantic Housing Foundation, Inc. ("Defendant" or "AHF"), and shows this court:

## PRELIMINARY STATEMENT

1. Plaintiff seeks a remedy for Defendant's interference with Plaintiff's rights to take a leave of absence from employment and subsequent retaliatory and unlawful termination of employment in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq. This is also an action for all damages available, punitive damages, and attorney fees for retaliation and Defendant's violations of her rights under the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et. seq.* ("Section 1981").

## JURISDICTION AND VENUE

2. This Court possesses subject matter jurisdiction over Plaintiff's claims because they arise under the laws of the United States. 28 U.S.C. §§ 1331 and 1343; 29 U.S.C. § 1337; 42 U.S.C. § 1981; 29 U.S.C. § 2617; 29 U.S.C. § 2201; and 29 U.S.C. § 2202.

3. Venue is proper within this District because the unlawful practices complained of herein occurred within the Southern District of Georgia. Accordingly, venue lies in the United States District Court for the Southern District of Georgia under 28 U.S.C. § 1391(b).

## THE PARTIES

4. At all times relevant, Plaintiff was a citizen of the United States and a resident of Chatham County, Georgia. Plaintiff is a Black or African American female who, at all times relevant, was employed by Defendant until her termination on October 15, 2020. Plaintiff submits herself to the jurisdiction of this Court.

5. Plaintiff is an individual formerly employed by Defendant and is therefore an employee as defined within the meaning of the FMLA, working more than 1250 hours in the twelve (12) months preceding her leave request and termination and prior to engaging in protected activity.

6. Defendant is a foreign nonprofit corporation licensed to do business in Georgia, and at all times material hereto has conducted business within this district and is subject to the jurisdiction of this court.

7. Defendant was the "employer" of Plaintiff within the meaning of 29 U.S.C. § 2611(4)(A) and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto.

8. Defendant may be served with process by delivering a copy of the *Summons* and *Complaint* to its Registered Agent, CT Corporation System, 289 S. Culver St., Lawrenceville, GA, 30046-4805.

## FACTS

9. Plaintiff was hired by AHF on or about December 21, 2018, in the position of Community Manager.

10. Plaintiff at all times was well qualified for the position(s) she held and was well qualified for the position she held at the time she was terminated.

11. Prior to requesting leave under the FMLA and prior to engaging in protected activity under Section 1981 and the FMLA, Plaintiff never received any negative employment actions or received any negative reviews.

12. On or about August 17, 2020, Plaintiff received an FMLA request from leasing professional, Ms. Andrell Fields ("Ms. Fields").

13. Plaintiff immediately forwarded Ms. Fields' FMLA request to Plaintiff's Regional Manager, Erin Helman ("Helman").

14. On or about August 18, 2020, Plaintiff received a conference call invite to be on a call with Belinda Solis, Vice President of Property Management Operation-East ("Solis"); Helman; Adi Widjaja, Payroll/ Benefits Specialist ("Widjaja"); and Sheila Maness, Human Resources ("Maness").

15. During the conference call on or about August 18, 2020, it was stated that AHF wished to deny Ms. Fields' FMLA request and terminate Ms. Fields' employment (which was initially offered for one (1) year).

16. Plaintiff opposed the retaliatory actions and stated openly during the conference call that she did not believe this was allowed under the FMLA.

17. Other attendees on the conference call became noticeably annoyed and Maness asked Plaintiff: "what are your sources?" Plaintiff explained that her sources were from the Department of Labor ("DOL") rules and regulations on its website.

18. Collectively the other attendees decided that the claim would be denied.

19. The other attendees additionally indicated that they would be scheduling a meeting with Ms. Fields on the following day.

20. After the conference call ended, Plaintiff prepared an email with DOL rules and regulations that she had read and expressed to all parties on the initial conference call that Plaintiff did not believe that AHF could deny the claim and attached the rules and regulations from the DOL website for reference.

21. On or about August 19, 2020, Plaintiff received another invite for a conference that morning with Solis, Helman, Maness and Plaintiff.

22. Plaintiff called Helman who linked Plaintiff with Maness and Solis. On this call Maness explained what Plaintiff would need to say to Ms. Fields. Plaintiff explained to Maness that she did not feel comfortable with leading the call for the FMLA denial since this is not something Plaintiff normally did.

23. Maness then stated she would lead the call and requested Plaintiff go ahead and call Ms. Fields into the office.

24. Ms. Fields entered the office and AHF denied her FMLA request stating she did not qualify. After the call Ms. Fields seemed upset and asked Plaintiff what was she going to do. Plaintiff responded to Ms. Fields and informed her that she could appeal the decision if she disagreed.

25. Ms. Fields emailed AHF for the appeal and requested a separation notice. Ms. Fields' request went without response. Ms. Fields then filed a complaint with the DOL who contacted Maness with AHF human resources.

26. On or about August 24, 2020, Plaintiff was informed by Helman that as a result of Ms. Fields complaint with the DOL, Ms. Fields employment was reinstated and her FMLA leave request was approved.

27. On or about October 5, 2020, Plaintiff notified Helman that her mother had been diagnosed with a serious health condition and that she required emergency surgery due to them finding an aggressive cancer near her kidney and groin.

28. Plaintiff further notified Helman that Plaintiff was concerned because the surgery seemed extensive and that her mother required her assistance.

29. Helman instructed Plaintiff to contact Widjaja.

30. Plaintiff contacted Widjaja and inquired about what the policy was for FMLA in regard to obtaining leave for her mother's serious health condition.

31. Widjaja explained Plaintiff would need to get the documentation from him and notify Helman.  Plaintiff informed Widjaja that she had already spoken with my Helman and that she was aware of the circumstances and need for leave.

32. Thereafter, on or about October 8, 2020, Plaintiff contacted Helman again to inform her that Plaintiff still needed the documentation and that she would need to take the FMLA leave to assist her mother.

33. Helman then asked Plaintiff how she planned on taking her FMLA and Helman and Plaintiff discussed the possibility of Plaintiff taking intermittent leave.

34. On or about October 9, 2020, one of the residents at the community that Plaintiff worked in made racist comments to an AHF employee for the second time.  Previously, AHF employee, Erika Davis had complained to the Community Manager about the comments and behavior of the resident.

35. Plaintiff opposed these discriminatory comments by the resident by taking action to non-renew the resident's lease based on these racist comments and her discriminatory treatment of the AHF employee for the second time.

36. On or about October 12, 2020, Plaintiff still had not received any documentation regarding her FMLA request or approval and it was the day of her mother's surgery. Plaintiff informed Helman again of the FMLA leave request.

37. The AHF employee who was subjected to the racist comments and discriminatory treatment again on October 12, 2020, wrote a formal compliant

stating she felt the resident's behavior was racist and motivated by characteristics of her nationality/race and sent the complaint to Maness, Helman, and to Plaintiff.

38. Later that same day, Solis emailed Plaintiff and asked for her to provide a statement regarding the complaint made by the AHF employee.

39. Plaintiff emailed Solis back explaining what she had witnessed.

40. Plaintiff then called Solis and explained in detail the events from that day and other events which occurred on October 9, 2020.

41. Plaintiff also renewed her FMLA leave request to Solis on the telephone.

42. After Plaintiff's call with Solis, Plaintiff called Widjaja again about the FMLA documentation and Widjaja sent Plaintiff one (1) of the two (2) forms needed for Plaintiff's FMLA leave. Plaintiff requested the 2nd form from Widjaja and he stated that the form required him to complete a portion of it and that he would send the completed form to Plaintiff after he completed the company's portion.

43. On October 13, 2020, Plaintiff called Helman and during their discussion Plaintiff brought up the need for FMLA leave again.

44. Plaintiff was terminated by Defendant on or about October 15, 2020.

45. The pretextual reason provided by Defendant at that time was that the resident who had the complaint filed against her and who had been non-renewed had filed a complaint against Plaintiff.

46. Defendant pretextually claimed that Plaintiff was terminated for gross misconduct, which is completely made up and pretextual and not the real reason for

her termination. Plaintiff was treated differently than similarly situated coworkers based on her race and in retaliation for opposing discrimination.

## CLAIMS FOR RELIEF
## COUNT I – FMLA INTERFERENCE

47. Plaintiff realleges the preceding paragraphs as if set forth fully herein.

48. Defendant interfered with Plaintiff's use of her FMLA leave based on her notice of intent to take FMLA leave.

49. Defendant failed to grant leave to Plaintiff. Said failure to grant leave to Plaintiff was illegal interference.

50. In this case, Defendant's failure to inquire further as to the need for leave was illegal interference under the FMLA.

51. After notice has been given, the regulations obligate employers to, "in all cases," inquire further of the employee to obtain necessary details of leave to be taken. 29 C.F.R. § 825.305(c).

52. Here, Defendant was on notice that Plaintiff required FMLA leave.

53. Despite being aware of Plaintiff's need for leave, Defendant did not request further information. Defendant interfered with Plaintiff's rights by terminating her during her requested FMLA leave period and/or by failing to inquire further regarding her request for leave.

54. Plaintiff would have taken available FMLA leave had Defendant not engaged in the above referenced conduct.

55. Defendant's actions as set forth above constituted interference under the FMLA and that said conduct of Defendant is actionable pursuant to 29 U.S.C. Sections 2615 and 2617. Defendant's actions were willful.

56. As a proximate result of the acts of Defendant, Plaintiff has suffered the loss of her job position including back pay, future pay, and lost fringe benefits and pension benefits. By virtue of the willful violation of the act, Plaintiff is entitled to liquidated damages. Plaintiff has also been forced to incur costs and attorney's fees.

## COUNT II – FMLA RETALIATION

57. Plaintiff realleges the preceding paragraphs as if set forth fully herein.

58. Defendant willfully and unlawfully discharged Plaintiff and Plaintiff states that Defendant's actions in terminating her employment constituted interference, discrimination and retaliation against Plaintiff because of her exercising her rights provided for under the FMLA. Said conduct of Defendant is actionable pursuant to 29 U.S.C. Sections 2615 and 2617.

59. The proffered reasons for Plaintiff's termination are false and pretextual.

60. Plaintiff was well qualified for the position she held and the termination of Plaintiff violated the FMLA.

61. As a proximate result of the acts of Defendant, Plaintiff has suffered the loss of her job position including back pay, future pay, and lost fringe benefits and

pension benefits. By virtue of the willful violation of the act, Plaintiff is entitled to liquidated damages. Plaintiff has also been forced to incur costs and attorney's fees.

### COUNT III – FMLA RETALIATION

62. Plaintiff realleges the preceding paragraphs as if set forth fully herein.

63. Defendant willfully and unlawfully discharged Plaintiff and Plaintiff states that Defendant's actions in terminating her employment constituted interference, discrimination and retaliation against Plaintiff because of her opposing the denial of Ms. Fields' leave and violation of Ms. Fields' rights provided for under the FMLA. Said conduct of Defendant is actionable pursuant to 29 U.S.C. Sections 2615 and 2617.

64. The proffered reasons for Plaintiff's termination are false and pretextual.

65. Plaintiff was well qualified for the position she held and the termination of Plaintiff violated the FMLA.

66. As a proximate result of the acts of Defendant, Plaintiff has suffered the loss of her job position including back pay, future pay, and lost fringe benefits and pension benefits. By virtue of the willful violation of the act, Plaintiff is entitled to liquidated damages. Plaintiff has also been forced to incur costs and attorney's fees.

### COUNT IV – RACE DISCRIMINTATION IN VIOLATION OF 42 U.S.C. § 1981

67. Plaintiff realleges the preceding paragraphs as if set forth fully herein.

68. Plaintiff is African American and black in color.

69. Defendant subjected Plaintiff to discrimination on the basis of her race.

70. Plaintiff had an employment agreement with Defendant within the meaning of 42 U.S.C. § 1981, under which, *inter alia*, Plaintiff worked for Defendant, and Defendant compensated Plaintiff for work.

71. Plaintiff performed her contractual obligations.

72. Defendant intentionally caused an infringement of Plaintiff's rights protected by 42 U.S.C. § 1981.

73. 42 U.S.C. § 1981 prohibits Defendant from discriminating against Plaintiff on the basis of race or color with regard to the making and enforcing of employment.

74. Defendant violated Plaintiff's rights under 42 U.S.C. § 1981 by subjecting her to adverse employment actions, because of her race, which materially affected the terms and conditions of Plaintiff's employment.

75. Defendant intentionally discriminated against Plaintiff on the basis of Plaintiff's race and/or color in violation of 42 U.S.C. § 1981.

76. Defendant treated Plaintiff differently than other employees outside of Plaintiff's protected race class. Any alleged non-discriminatory reason given by Defendant for treating Plaintiff differently than employees outside of Plaintiff's protected race class is pretext for unlawful discrimination.

77. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including lost wages, emotional distress, and other indignities.

78. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's actions toward Plaintiff were undertaken in bad faith.

79. The acts and omissions of Defendant were willful, malicious, in reckless disregard of Plaintiff's protected rights entitling Plaintiff to punitive damages.

80. Defendant is liable for the damages caused by its discrimination.

## COUNT V – RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

81. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

82. Plaintiff's participation in the investigation into her subordinate's complaint and opposition to race discrimination by non-renewing the resident over her racial discrimination constitute protected activity under 42 U.S.C. § 1981.

83. Defendant subjected Plaintiff to adverse actions (*to wit, termination*) because of her protected conduct.

84. The adverse action to which Plaintiff was subjected would dissuade a reasonable employee from making or supporting a charge of discrimination.

85. There was a causal connection between the protected conduct and the adverse action of termination.

86. As a direct and proximate result of Defendant's violations, Plaintiff has suffered economic and non-pecuniary damages.

87. Defendant willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith. Plaintiff is entitled to punitive damages, lost wages and benefits, compensatory damages, attorneys' fees and costs, prejudgment interest, and reinstatement or front pay in lieu thereof,.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court:

A. General damages for mental and emotional suffering;

B. Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval;

C. Special damages for lost wages and benefits and prejudgment interest;

D. An amount of liquidated damages equal to her damages;

E. Reasonable attorney's fees and expenses of litigation;

F. Trial by jury as to all issues;

G. Prejudgment interest at the rate allowed by law;

H. Declaratory relief to the effect Defendant violated Plaintiff's rights;

I. Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein;

J. All other relief to which she may be entitled.

Respectfully submitted the 30th day of September, 2022.

**CHARLES HERMAN LAW**

/s/ Charles Herman
Charles Herman
Georgia Bar No. 142852
*Attorney for Plaintiff*

7 East Congress Street, Suite 611A
Savannah, Georgia 31401
(912) 244-3999
(912) 257-7301 Facsimile
charles@charleshermanlaw.com